**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| ALDEN H. GLESSNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 1:22-CV-00397-HAB |
| | ) | |
| JAMIE BAUGHMAN, CORY SHEPHERD, | ) | |
| INC., CITY OF DUNKIRK, and JAY | ) | |
| COUNTY SHERIFF LARRY RAY NEWTON | ) | |
| JR., | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Plaintiff Alden Glessner ("Glessner") should have stayed home on September 6, 2021. Instead, when his friend texted him his location and his belief that he was going to jail, Glessner was Johnny on the spot. He arrived at the scene, refused to leave, and was arrested. Glessner now sues under 42 U.S.C. §1983 and state law alleging that Officer Jamie Baughman ("Ofc. Baughman"), and Deputy Sheriff Cory Shepherd ("Deputy Shepherd") used excessive force in violation of the Fourth Amendment and battered him during his arrest. He also sues the City of Dunkirk ("the City"), and the Sheriff of Jay County ("the Sheriff") on a theory of respondeat superior liability. (Am. Compl., ECF No. 14).

Before the Court are Defendants' Motions for Summary Judgment (ECF Nos. 32, 35). The parties have fully briefed the motions (ECF Nos. 33, 34, 36, 37, 48, 49, 51-53, and 55) making the matter ripe for decision. For the following reasons, the Court GRANTS the Motions for Summary Judgment.

## FACTUAL BACKGROUND[1]

On September 6, 2021, Jamie Baughman, an officer with the City of Dunkirk Police Department, responded to a citizen's call of an unknown person on a nearby residential property. When he arrived at the scene, he encountered Lucas Chapman ("Chapman") removing items from the residence that were not his. Ofc. Baughman identified Chapman and determined that he had outstanding active warrants. Ofc. Baughman arrested Chapman and placed him in the back seat of his police cruiser. At some point – no word on whether it was before or after Ofc. Baughman arrived and placed him under arrest – Chapman sent a text message to Glessner telling him to come to 515 East North Street in Dunkirk, Indiana and that Glessner anticipated going to jail.

As any loyal friend would, Glessner showed up to help. Ofc. Baughman approached Glessner and asked him why he was there. Glessner advised that he was there because of Chapman's text message. Ofc. Baughman told him to go home. Glessner though, continued to engage Ofc. Baughman and refused to leave the area. What happens next is disputed. Ofc. Baughman's version is that Glessner approached the police cruiser where Chapman was being held and Ofc. Baughman arrested him. Glessner's version is that he used profanity towards the officer, refused to leave and Ofc. Baughman arrested him. Under either version, what is clear is that Glessner found himself in handcuffs. Once Ofc. Baughman grabbed Glessner's left hand, Glessner voluntarily placed his right hand behind his back allowing Ofc. Baughman to handcuff him. All parties agree that Glessner succumbed to being handcuffed without further escalation.

Ofc. Baughman walked Glessner to the police cruiser and had him stand at the rear of the car to await transport. The two engaged in some conversation about the arrest. After a few minutes,

---

[1] These facts originate from the Defendants' Statements of Material Facts (ECF Nos. 34, 37) and the Plaintiff's responses to these statements of facts. (ECF Nos. 48, 49).

Glessner asked Ofc. Baughman to "double lock"[2] the handcuffs because they were "starting to get tight." Ofc. Baughman did not double lock the handcuffs as requested and Glessner repeated that they were "starting to get a little tight." All parties agree that Glessner asked several different times for Ofc. Baughman to loosen the handcuffs.

Deputy Shepherd arrived to transport Glessner to the Jay County jail. According to Glessner's time estimate, he was in the handcuffs about 15 minutes before Deputy Shepherd arrived. (Glessner Dep., ECF No. 34-1 at 33). Deputy Shepherd did not witness any of Ofc. Baughman's interactions with Glessner and only arrived at the scene after Glessner was handcuffed. Deputy Shepherd assisted Glessner into his police vehicle by touching Glessner's arm. While being transported, Glessner states that he complained about the handcuffs being too tight twice and asked Deputy Shepherd to readjust them. Glessner states that Deputy Shepherd told him to move forward on the seat. Deputy Shepherd does not recall these events and states that Glessner complained about Ofc. Baughman or was otherwise silent during his jail transport. Glessner testified it was about a 10-15 minute drive to the jail. (Glessner Dep. at 33).

Once he arrived at the jail, Deputy Shepherd removed Glessner's handcuffs and turned him over to booking. Glessner observed redness to and indentations on his wrist once the handcuffs were removed and experienced some soreness. Corrections Officer Shadie Canterbury ("CO Canterbury") completed the booking process with Glessner. As part of that process, CO Canterbury asked Glessner about his medical history and current medical health. During that process, Glessner stated that he did not need any special care. CO Canterbury did not observe any injuries to Glessner's wrists when she assessed his wrists for signs of self-harm per the jail's

---

[2] When handcuffs are "double locked" they are unable to tighten on the wrists of the person handcuffed and are locked in place.

standard protocol, nor does CO Canterbury recall Glessner complaining of any pain or injuries to his wrists.

After Glessner bonded out a few hours after booking, his wrists were "very red and sore." He took photographs of his wrists which show some marks on his wrists. Glessner did not seek any medical attention and did not miss any work related to his wrist soreness. To Glessner's knowledge, he did not file a Notice of Tort Claim relating to his claims against the Defendants.[3]

## DISCUSSION

### A. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the district court of the basis of its motion and identifying those portions of designated evidence that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation marks and citation omitted).

A factual issue is material only if resolving the factual issue might change the outcome of the case under the governing law. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). A factual issue is genuine only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented. *See Anderson*, 477 U.S. at 248. In

---

[3] The day after his arrest, Ofc. Baughman was speaking to one of Glessner's neighbors on her front porch. Glessner was driving past the house and saw Ofc. Baughman. Glessner stopped his truck and yelled out of the window to Ofc. Baughman. The two men had some back-and-forth banter and then Glessner left. Glessner filed a citizen's complaint at the Dunkirk Police Department about this confrontation.

deciding a motion for summary judgment, the court "may not 'assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence.'" *Bassett v. I.C. Sys., Inc.*, 715 F. Supp. 2d 803, 808 (N.D. Ill. 2010) (quoting *Stokes v. Bd. of Educ. of the City of Chi.*, 599 F.3d 617, 619 (7th Cir. 2010)). Instead, it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party. *See Anderson*, 477 U.S. at 255.

### B. Analysis

Glessner's amended complaint alleges that he was subjected to excessive force by Ofc. Baughman during his arrest on September 6, 2021, and that Deputy Shepherd failed to intervene and loosen the handcuffs. He also contends that the excessive force constituted battery for which the City and the Sheriff are vicariously liable. However, in his response to Deputy Shepherd's and the Sheriff's motion for summary judgment, Glessner concedes that he did not file a Notice of Tort Claim. He further concedes that there are no state law claims against any defendants nor is he making a respondeat superior claim against the City or the Sheriff. (ECF No. 49, ¶1 and 52, p. 1). Following these concessions, the Court is left only with Glessner's §1983 claims against Ofc. Baughman for excessive force and his claim against Deputy Shepherd for failure to intervene.

### 1. Excessive Force

Ofc. Baughman argues that his limited conduct during the incident in question does not rise to a level of unreasonable force sufficient to support a Fourth Amendment violation. Even if it does, he contends that he is entitled to qualified immunity. Under that doctrine, Glessner has the burden to show both "(1) that the facts make out a constitutional violation, and (2) that the constitutional right was 'clearly established' at the time of the official's alleged misconduct." *Abbott v. Sangamon Cnty.*, 705 F.3d 706, 713 (7th Cir. 2013). "These questions may be addressed

in either order." *Smith v. Finkley*, 10 F.4th 725, 737 (7th Cir. 2021). "If *either* inquiry is answered in the negative, the defendant official is protected by qualified immunity." *Id.* (emphasis in original) (quotation omitted).

The Court turns first to the issue of whether Ofc. Baughman's actions amount to excessive force. The Fourth Amendment—applied to state actors via the Fourteenth Amendment—prohibits police officers from using excessive force when seizing a person. *Graham v. Connor*, 490 U.S. 386, 394 (1989). "Whether an officer violated a suspect's rights depends on the reasonableness of the use of force." *Flowers v. Renfro*, 46 F.4th 631, 636 (7th Cir. 2022). Objective reasonableness is a pure question of law. *Scott v. Harris*, 550 U.S. 372, 381 n. 8 (2007) ("the reasonableness of [defendant's] actions ... is a pure question of law."); *Phillips v. Community Ins. Corp.*, 678 F.3d 513, 520 (7th Cir. 2012) ("Objective reasonableness of force is a legal determination rather than a pure question of fact for the jury to decide. We defer to a jury's determination of what occurred during an arrest or whose testimony is credible. But ... we must independently review the jury's interpretation of what is reasonable under the Fourth Amendment."). "An officer's use of force is unreasonable if, judging from the totality of the circumstances at the time of the arrest, the officer uses greater force than was reasonably necessary to effectuate the arrest." *Gupta v. Melloh*, 19 F.4th 990, 996 (7th Cir. 2021) (quoting *Phillips*, 678 F.3d at 519). The court can consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he [or she] is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 397.

An excessive force claim may be predicated upon unreasonably tight handcuffs. *See Tibbs v. City of Chicago*, 469 F.3d 661, 666 (7th Cir. 2006); *Rooni v. Biser*, 742 F.3d 737, 742 (7th Cir. 2014) ("A person has the right to be free from an officer's knowing use of handcuffs in a way that

would inflict unnecessary pain or injury, if that person presents little or no risk of flight or threat of injury."). In such cases, plaintiffs must present evidence of his complaints to officers, the degree of his pain, the injuries he suffered, and whether he sought medical care. *See Tibbs*, 469 F.3d at 665-66 (discussing cases in which the force used in handcuffing constituted a valid excessive force claim).

At the summary judgment stage, this can be a nuanced determination, especially when some, but not all, of the factors are evident in the record. For example, an excessive-force claim survived summary judgment in *Payne v. Pauley*, 337 F.3d 767, 774–75, 779–81 (7th Cir. 2003), when the evidence showed that (1) a detainee didn't resist arrest, disobey orders, pose a threat, and was suspected only of minor crimes; (2) was handcuffed so tightly that she lost feeling in her hands; (3) the defendant refused to loosen the cuffs when told of the numbness; (4) the defendant fought with other officers over the plaintiff's arm for half an hour and twisted her arm; and (5) the plaintiff later had two surgeries because of the handcuffing. By contrast, the officer in *Tibbs* didn't violate a detainee's rights when the plaintiff complained once about his handcuffs and didn't elaborate on his injury, numbness, or degree of pain, was handcuffed for less than an hour, and wasn't seriously injured. *Tibbs*, 469 F.3d at 666.

Certainly, the authority to arrest necessarily includes the use of some degree of physical coercion, *see Sow v. Fortville Police Dep't*, 636 F.3d 293, 303 (7th Cir. 2011) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989). But to defeat summary judgment, a plaintiff must do more than rely on discomfort and pain from tight handcuffs. Indeed, one line of demarcation between *Payne* and *Tibbs* is the degree of injury suffered by the plaintiff. To be actionable, claims about overly tight handcuffs generally require assertions of serious injuries, rather than mild allegations such as redness lasting a day or two. *See Tibbs*, 469 F.3d. at 666; *Herzog v. Village of Winnetka*,

*39* F.3d 1041 (7th Cir. 2002); see also, *Koch v. City of Del City*, 660 F.3d 1228, 1247-48 (10th Cir. 2011) (an excessive force claim based on tight handcuffs requires the plaintiff to show "some actual injury that is not de minimis.").

Turning to the facts here, the Court finds Gessner's claim falls closer to the *Tibbs* line than *Payne.* The record, with favorable inferences drawn in Glessner's favor, reveals that Glessner, like Tibbs, suffered some discomfort and pain from tight handcuffs. Glessner complained once or twice to Ofc. Baughman that the handcuffs were "starting to get tight." But Glessner did not elaborate that the handcuffs were painful or causing him any serious discomfort. Like Tibbs, he was handcuffed for a short time while he was awaiting transport to the jail and in the police car while he was being transported. There is no assertion that this was a prolonged time – by Glessner's own admission it was about 30 minutes – or that the length of time unreasonably caused more injury other than soreness and discomfort. Glessner experienced some redness and soreness on his wrists but he neither sought nor received medical care for any alleged wrist injury. Further, jail personnel checked his wrists pursuant to their own protocol and did not observe any obvious injury.

While the Court concedes that Glessner's crime was minor and he did not appear to be a flight risk (recall he was arrested because he would not leave), without some corresponding evidence of serious injury or evidence that the officer knew he was inflicting significant pain and ignored it, see *Day v. Wooten*, 947 F.3d 453, 462 (7th Cir. 2020) ("the key fact is that the officer must *know* the handcuffs will cause unnecessary pain or injury"), the Court cannot conclude that Ofc. Baughman's conduct violated the Fourth Amendment. See generally *Sow*, 636 F.3d 293 (Plaintiff's evidence "not sufficient to raise a genuine issue of material fact regarding whether [the defendant] used excessive force" where plaintiff failed to elaborate on any injury and did not

receive any medical treatment resulting from the use of the handcuffs).[4] Ofc. Baughman is entitled to summary judgment on the excessive force claim against him.

### 2. Failure to Intervene

This leaves the claim against Deputy Shepherd. Glessner asserts that he failed to intervene to loosen the overly tight handcuffs. To defeat summary judgment in a failure to intervene, a plaintiff must produce evidence that an officer "(1) had reason to know that a fellow officer was using excessive force or committing a constitutional violation, and (2) had a realistic opportunity to intervene to prevent the act from occurring." *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009). But "[t]he fate of [a] plaintiff's failure to intervene claim is closely linked to that of h[is] excessive force claim since, by definition, if there is no excessive force then there can be no failure to intervene." *Abdullahi v. City of Madison*, 423 F.3d 763, 767–68 (7th Cir. 2005); *Turner v. City of Champaign*, 979 F.3d 563, 571 (7th Cir. 2020) (affirming summary judgment on failure to intervene claim where district court found no excessive force was used against the Plaintiff). Since the Court finds that Ofc. Baughman did not use excessive force, Glessner's failure to intervene claim against Deputy Shepherd falls with it. Deputy Shepherd is entitled to summary judgment.

### CONCLUSION

Based on the above reasoning, the Defendants' Motions for Summary Judgment, [ECF Nos. 32 and 35], are GRANTED. The Clerk is directed to enter judgment in favor of the Defendants.

SO ORDERED on June 17, 2024.

s/ *Holly A. Brady*
CHIEF JUDGE HOLLY A. BRADY

---

[4] Because the Court does not find a Fourth Amendment violation, it need not address whether Ofc. Baughman violated a clearly established right.

UNITED STATES DISTRICT COURT